## LONGENECKER v. KUHN et al.

(Supreme Court, Appellate Division, Second Department. May 1, 1908.)

1. ATTORNEY AND CLIENT—ACTS OF ATTORNEY.

Where an attorney acted as counsel for a firm consisting of plaintiff and defendant F., and as such drew a transfer of the firm property to plaintiff with a chattel mortgage back to F., after which plaintiff executed a bill of sale retransferring the property to F. and the latter satisfied the mortgage, which transaction plaintiff subsequently repudiated, such attorney thereafter committed no breach of duty or confidence to plaintiff by drawing a bill of sale of the property from defendant F. to a third person.

2. TROVER AND CONVERSION—ACT CONSTITUTING CONVERSION.

Where, after a conveyance by F. to plaintiff with a chattel mortgage to secure the price, plaintiff rescinded the transaction and executed a bill of sale of the property back to F., and thereafter again attempted to avoid such bill of sale, the act of F. in taking possession of the property and transferring the same to a third person did not constitute a conversion, since, if the bill of sale and the chattel mortgage were still in force, F. was entitled to take possession thereof on plaintiff's abandoning the property.

Appeal from Kings County Court.

Action by David R. Longenecker against John R. Kuhn and others. From a judgment for plaintiff, and from an order denying defendant's motion for new trial on the minutes, they appeal. Reversed.

Argued before WOODWARD, JENKS, HOOKER, RICH, and MILLER, JJ.

John C. McGuire, for appellants.

Alfred T. Davison, for respondent.

MILLER, J. This is an action for a conspiracy to deprive the plaintiff of his property by converting it to the use of the defendants or some of them. The facts, though there is but little conflict in the evidence, are somewhat complicated. The defendant Fraim, an old man over 70 years of age, owned a dental business, which was conducted under the name of Fraim & Nephew. The plaintiff was his nephew, and had learned the business with him, and for many years had been associated and lived with him, but at the time of the transactions involved in this suit they were living apart, and the plaintiff was conducting an independent business. The defendant Kuhn was and for many years had been the friend and lawyer of both. The defendant Firth was employed in the business by the defendant Fraim at the time of the commencement of the negotiations leading up to this suit. In March, 1903, the defendant Fraim sold the business to the plaintiff, and executed to him a bill of sale thereof, taking back a chattel mortgage to secure the payment of a note of $450 given for the purchase price. The defendant Kuhn drew the papers, acting for both parties. In July, 1903, the plaintiff, having meanwhile become dissatisfied, executed a bill of sale retransferring the property to the defendant Fraim, and the defendant Fraim executed a satisfaction of the chattel mortgage; the defendant Kuhn again preparing the papers and acting for both. The parties differ as to that transaction only in this respect, viz.: The plaintiff asserts that he went alone to the defendant Kuhn's office to execute the bill of sale. The defendants say that both were there together. The plaintiff says that the papers were never delivered. The defendants assert that they were. It is undisputed that shortly afterward the plaintiff concluded to resume control of the business. He says he was advised by the defendant Kuhn that the papers not having been executed were a nullity. The defendant Kuhn says that he advised him to the contrary; that, the papers having been delivered, it would be necessary to have new ones executed, and that he had better take charge of the business for a while, and to make sure whether he wanted to go on with it before having the papers executed. The new bill of sale and the

satisfaction of the chattel mortgage were left in the possession of the defendant Kuhn. The plaintiff did resume control of the business, retaining the defendant Firth in his employ until August or September, 1904. Prior to the July transaction he had paid to the defendant Fraim $100. Subsequently thereto he paid him $150 more. In August or September, 1904, the plaintiff again became dissatisfied, and here again there is some conflict as to precisely what occurred; the defendants asserting that the plaintiff surrendered the business and the property to the defendant Fraim, and the plaintiff denying it. At any rate, the plaintiff went away to visit his son at Saranac Lake. Before going he wrote the landlord the following letters:

"Brooklyn, N. Y., Sept. 26, 1904.

"Mr. Bogart—Dear Sir: You will collect the rent of 301 Fulton St. from Fraim & Nephew as heretofore, as I shall assume no responsibility in the future.

"Yours, etc.,                                    D. R. Longenecker."

"Brooklyn, N. Y., Oct. 5, 1904.

"Mr. Bogart—Dear Sir: I did not know you were in the office while I was at the other end of the 'Phone.' I left your card below and was not quite sure of your number.

"We had better let 'things simmer' for a few days as I expect to get hold of that place. And 'clean house.'

"I am going down there just as soon as I mail this, and have an understanding with Dr. Fraim who is my uncle. He and 'Firth' must go, then I will 'take hold.'

"Yours truly,                                    D. R. Longenecker."

"Brooklyn, N. Y., Oct. 18, 1904.

"Mr. Bogart—Dear Sir: I cannot make any satisfactory arrangements with Dr. Fraim so have withdrawn. I still think something will happen so I can take hold, but at present I am out. I am going to Saranac Lake to see my son who is ill.

"Now if I were you I would do nothing hasty, as I am satisfied they will pay their rent and that is all you want. I have no grievance.

"Yours truly,                                    D. R. Longenecker."

On October 22, 1904, he wrote the defendant Fraim from Saranac Lake, in substance informing said Fraim that he considered himself out of the business, and advising Fraim to complete his plans with Firth, referring to some negotiations which he thought Firth and Fraim were conducting clandestinely. On the 26th of October the defendant Fraim executed a bill of sale of said business and the furniture and property used in connection therewith to the defendant Firth, and the latter took possession, and, when the plaintiff returned, denied him admittance. The defendant Kuhn drew said bill of sale. The jury found a verdict against all of the defendants for $900 on the ground of conspiracy.

We are unable to find any evidence whatever in the record to connect the defendant Kuhn with the alleged conspiracy. The misunderstanding between him and the plaintiff as to whether the bill of sale and the satisfaction of the chattel mortgage of July, 1903, were ever delivered, does not suffice. If the plaintiff's version was correct, the original bill of sale of March, 1903, remained in full force and effect. If the defendant Kuhn's recollection of the transaction was correct, the parties were restored to their original situation be-

fore the negotiations began. In the one case the defendant Fraim had the absolute title to the property, in the other a title under the chattel mortgage subject to the plaintiff's right to redeem, and, whichever view of the transaction was correct, the defendant Kuhn was guilty of no wrong in drawing the bill of sale for the defendants Fraim and Firth in October, 1904.

It is difficult to perceive how, upon this record, an action for conversion could be maintained against the defendants Fraim and Firth. The plaintiff's own letters show that he had abandoned the premises by refusing to pay rent to the landlord, and by directing the latter to collect the rent of the firm of Fraim & Nephew, and that he had advised the defendant Fraim of his withdrawal. If the bill of sale and chattel mortgage of March, 1903, were still in force, the defendant Fraim had a right to take possession under the chattel mortgage, and was not liable for conversion in so doing.

The judgment and order should be reversed.

Judgment and order of the County Court of Kings County reversed, and new trial ordered, costs to abide the event. All concur.